We'll hear argument first in Case 13-628, Zivitofsky v. Kerry. Ms. Lewin. Mr. Chief Justice, and may it please the Court, how an American is identified in his or her passport or U.S. consular report of birth abroad, including the place of birth designation, does not amount to formal recognition by the United States of that designated location's sovereign status. This is the principal reason why Congress's law authorizing Jerusalem-born citizens to carry passports that say they were born in Israel is a legitimate congressional exercise of Congress's power to regulate foreign commerce. Suppose that the President and the Secretary of State put on the passport the place of birth, written it out, the place of birth on this Jerusalem-born citizens passport has been listed as Israel at the holder's request. This designation is neither an acknowledgment nor a declaration by the Department of State or the President of the United States that Jerusalem is within the borders of the State of Israel. Could the President under existing statute and the Secretary of State under existing statute put that statement on the passport? Yes, Your Honor. They could put that statement on the passport. But if Congress then passed a law saying that that statement had to come off every passport, could Congress do that? Yes, Justice Kagan. The the we there's no restriction on the initial granting of recognition  to a person who has the ability afterwards upon deliberation to decide if they disagree with that recognition. But in the case that Justice Kennedy said that ever happened in the history of the United States where Congress, after the President had declared that it was not recognizing someone, has Congress ever recognized? Yes, Justice Sotomayor. In 1898, Congress passed a joint resolution for the recognition of the independence of the people of Cuba over the initial opposition of President McKinley, and that ended up recognizing the independence of Cuba. You were careful to say at the outset that this is not recognition. The court of appeals decision, I think it was in the Judge Tatel concurrence, said that both parties urge upon us that they the power of recognition is involved here and Congress has done it, and then, of course, the Attorney General takes the opposite position, that A, this is recognition, and B, that's why it's void. Did you change your position here, or am I just misinterpreting the way the court of appeals discussed it?   I'm just saying that the Court of Appeals has given alternative options for resolving this issue. Our primary position, as I said at the outset, is that what is written in this statute does not amount to a formal recognition of sovereignty, because the language of the statute itself is very narrow. It begins by saying that for the purposes of, for the narrow purposes of recording a place of birth on a passport or a consular report of birth abroad, that is what this statute provides for. It also does not state that in all circumstances you have to list Israel as the place of birth. It is merely giving the individual choice. The provision is part of a section, section 214, and I think you're trying to read as though it is disassociated from the purpose that's expressed throughout 214, that is, that Jerusalem is the capital of Israel. Congress said that, and you are trying to deal with a piece of one section without regard to the thrust of the whole provision that Congress has said. We think Jerusalem is the capital of Israel. Justice Ginsburg, the — that is correct. This section of the statute should be reviewed and the constitutionality of it be determined on its own, but the Court should look not at what Congress may have intended by the entire section, but rather what this section actually did. And this section, as I said, gives the individuals a choice and does not confer formal recognition. There are benefits that Congress has. Breyer. May you say that, but the — you say I've heard exactly what you say, and I think that's certainly a reasonable position. You could read this and say it doesn't really say anything about recognizing anything. But the Solicitor General of the United States, after conferring with the State Department, says, since Israel's founding, every President has adhered to the position that the status of Jerusalem should not be unilaterally determined by a party. And he adds, by requiring the President to contradict his recognition position regarding Jerusalem in official communications with foreign sovereigns, the section unconstitutionally encroaches on the President's core recognition authority. So he has a different view. He thinks it is our policy not to recognize Jerusalem as the capital, which you apparently agree with, and he thinks that this does have some tendency, at least, to suggest the contrary. Now, I'm a judge. I'm not a foreign affairs expert. And when he tells me that, and they are foreign affairs experts in the State Department, and they are not, how can I say that I'm right, even if I agree with you, and they who are in charge of foreign affairs are wrong when they make those two statements, which certainly sound plausible? Two points, Justice Breyer. The first is that what goes on a passport as a place of birth is not town to mount to recognizing foreign sovereignty. Taiwan is a perfect example.  And I'm going to interject at this point because you emphasize the Taiwan example, and it seems to me it's most distinguishable. Taiwan and China maintain from the beginning there is only one China, and so Taiwan is a place name, it's a region, it's in no way recognizing, no, there's no question of recognition in the Taiwan example. That's correct, Justice Ginsburg. So what you put on the passport does not automatically recognize. Go back to my question, which I'd like an answer to. I don't think that Taiwan is a counterexample, since the policy of the State Department in that thing that's FAM, which is the Foreign Affairs Manual, says pretty clearly that if there is a dispute about the larger power, i.e., China, you always can put in your passport the smaller place of birth, like a city, or I would think here Taiwan. So I don't hear the Department, who are, I guess I'm saying the experts, saying that the Taiwan example conflicted with their policy. Scalia. China objected to that, didn't it? China may have done. I want an answer to this question, not whether China objected or didn't object or so forth. I'm not interested in that. I'm interested in what we as judges do when the State Department and those charged say those other things were not contrary to our recognition policy. That's what they think, and this is. So one last point on Taiwan. I'd like the first point. What am I supposed to do in response? Well, the first point is that this, what goes on the passport, does not confer the benefits of formal recognition of sovereignty. This does not entitle the government, the foreign government, to bring cases in our courts to the protection of sovereign immunity or to the act of State doctrine. What goes on a passport, therefore, does not amount to sovereign immunity. Sotomayor, I thought your position was you couldn't care less if the State Department thinks that this is going to interfere with our relations with the Palestinians, that Congress is entitled to do what it is authorized to do under the Constitution even when that contradicts. Let's assume they can't recognize a country, but they can declare war on a country, can't they? Yes, yes. That the State Department has decided to recognize and to be friendly with. Yes, Justice Scalia. Congress can do that. That is correct. Congress can do that, and the test if there is a conflict. And you say you can do the same here, and the fact that the State Department doesn't like the fact that it makes the Palestinians angry is irrelevant. Absolutely, Justice Scalia. That is correct. And if you take that position, which explains it, then what do you think of Justice Story, who writes in 1833 that the exercise of the prerogative of acknowledging new nations and ministers, and he makes clear that that involves whether a city or a region is part of a country, et cetera. He says it's an executive function. Some argue, as we – I think we've just heard, that Congress could make that decision, too. But that hasn't been decided, and he concludes that a power so extensive in its reach over our foreign relations could not properly be conferred on any other than the executive department will admit of little doubt. So he is saying, of course, you have to have one person deciding such a thing, and that has to be the executive. That's 1833, pretty knowledgeable about the Founder's intent. That is a rather extreme position, number one, to suggest that the executive branch would have not only the authority to recognize a foreign government, but also, if the State Department says so, that automatically would end the question or any review by any other branch. The State Department merely says that the power is true. SOTOMAYOR There is always review with the power of the purse, and there's always review with not appointing an ambassador. SOTOMAYOR There is review in a variety of alternative ways by Congress. It just may not be the way you prefer, that they could pass a resolution contradicting that. That would have an illegal force. There – well, there is review, and even, both to respond to you, Justice Sotomayor and Justice Breyer, Justice Story and William Rall both recognized that authority of Congress to review. Justice Story also said that if such recognition is made, it's conclusive upon the nation unless, indeed, it can be reversed by an act of Congress repudiating it. And then he went further to say that if the President refuses to recognize, then, he said, Congress may notwithstanding solemnly acknowledge the sovereignty of the nation or party. And William Rall – Roberts, I suppose you could also say Hamilton in 1787 or whatever it was, Trump's story in 1830, right? I mean, he said pretty much the exact opposite, that the recognition of provision was really just a trivial formality. Sotomayor Hamilton also switched his position before he was in the administration and after he was in the administration. What that would seem to show, Mr. Chief Justice, is that it's not clear the history of the United States. Scalia In any case, this is not your main point, is it? You're being either forced into or willingly yield yourself to arguing that – against the proposition that if this is recognition, it is invalid. But your main position is this is not recognition. It just has an effect on the State Department's desire to make nice with the Palestinians. And your position is Congress has no compulsion to follow that, assuming it can't recognize. We don't claim that this is recognition. We do not claim that this is recognition. In fact, there is a conflict. Sotomayor One factual matter I'd like. I see in the record that your application for the passport asks for Jerusalem, Israel. But that was changed. Was it changed in litigation? Was there an actual official request to change it in your application? The initial request was made purely because of a misunderstanding of what the law initially required. Sotomayor Let me just answer my question. Did you apply formally to have it changed, or did you just take this – that position in litigation? The position was then subsequently taken in litigation, but in subsequent renewals of the passport, too, it has been just the request of Israel, be put on the passport, and it has come back with Jerusalem. Alito May I ask you another factual question? When Menachem was born, was he issued a birth certificate by the Israeli authorities? Yes. And the United States recognizes that as a lawful exercise of Israeli authority to issue a birth certificate for a child born in Jerusalem? I believe they do, Your Honor. So what – this is a question I would ask the Solicitor General, but I don't completely understand what the position of the United States is regarding Israeli sovereignty over Jerusalem. I understand it is the position of the United States that Israel does not exercise full sovereignty over Jerusalem, but in that – in this instance, the issuance of a birth certificate and others I can think of, I suspect the United States recognizes that Israel is lawfully exercising attributes of sovereignty over the territory of Jerusalem. Is that correct? So if someone – if, let's say, an American citizen committed a crime in Jerusalem, would the United States take the position that the Israeli government has no lawful authority to prosecute that person for the crime? I do not believe so, Your Honor. I believe that they would feel that the Israeli government has the authority to prosecute that crime. Ms. Lewin, if I can ask you, if your primary position is that this is not a recognition statute, can we talk a little bit about what it is? I mean, why – what is the design, what is the effect of this statute other than as something that goes to recognition? This statute is a statute that was created to give individuals the right to self-identify as they choose that they were born in Israel. But the United States government does not usually give people that right to self-identify in this way. In other words, I think this was the Chief Justice's question in the first argument. If you're an American citizen born in Northern Ireland, you can't get the right to say Ireland. For that matter, if you're an American citizen born in Jerusalem today, you can't get the right to say Palestine. This is a very selective vanity plate law, if we might call it that. And it's selective because Congress had, it appears to me, and it's consistent with the rest of the statute, as Justice Ginsburg said, a real view that this was the self-identification it wanted. In other words, the ability of American citizens to say, yes, I was born in Jerusalem and that means I was born in Israel. That and only that self-identification is allowed. This statute was rectifying a misguided policy of the State Department which enabled individuals born in Israel proper, whether in Tel Aviv or in Haifa, who were opposed politically to the State of Israel, to remove that sovereign, to remove reference to Israel from their passport. But it did not allow the flip. It did not allow those who are born in Jerusalem and who live under the sovereign government of Israel, who wish to put Israel on their passport, to put Israel on their  With this passport you can't do that. Ginsburg. What about Palestinians who were born in Jerusalem and want to have Palestine as their place of birth? That existed until 1948, that option.  So the law was not going to allow them to have Palestine. So the law was not going to allow them to have Palestine. People can't do that. Palestinians cannot, American-born Palestinians cannot do that. And that suggests that Congress had a view. And the view was that Jerusalem was properly part of Israel. And that is because this statute was dealing with an existing sovereign that you either remove from the passport or put on the passport. They weren't complicating the situation by putting in non-recognized sovereigns or other entities. They said you either put it on or you take it off. We'll give you the choice to do that. If an American citizen is born in Barcelona, Spain, is that citizen allowed by the State Department to put Barcelona as place of birth? If they wish to remove the country of birth and list the small entity, yes. And is that a vanity plate for people who believe in Catalan independence? It is enabling an individual to exercise their choice to self-identify as they choose. But again, your argument, and you're consistent on this, your first argument is that this is not recognition. Now, suppose the State Department, and I think this is his position, says this is recognition. If we defer to the State Department's judgment, to the government's executive judgment on that point, and the government said this is recognition, and you say it isn't recognition, why doesn't the government trump? If the government, if the Congress really wants to test its power, it can pass a law saying you must recognize Israel as being the legitimate government of Palestine. But it has not done that. And since it has not done that, it seems to me the government argument trumps. Justice Kennedy, you are correct. The way the balance of powers works is that the executive branch has the right to recognize the sovereign. However, if Congress deliberates, passes legislation, and that legislation is signed into law, then Congress's position trumps. But you say that this isn't recognition. So the ultimate conflict is not before us. And, therefore, the government's policy, which says that this is recognition, should be given deference, and it trumps. Well, Your Honor, if it does not amount to recognition, then Congress had the authority to pass this legislation pursuant to its passport authority. I guess there are competing canons here. I mean, one is, I suppose, that we listen to the State Department on matters of foreign affairs. But I suppose another one is that we do not hold an act of Congress to be unconstitutional and thereby ineffective. So that seems to me a draw, doesn't it? Yes, Justice Scalia. So the State Department says this amounts to recognition, and Congress says, whether it does or not, we want this person to be able to list Israel. That is correct. And since this was signed into law by the President, the law right now trumps whatever the executive branch may say. Can I give you a hypothetical, Ms. Lewin? Suppose that Congress passed a law, and this law said that the Secretary of State had to send an official letter to all foreign ministers whenever a U.S. citizen was born in Jerusalem. And that official letter from the Secretary of State said, says just, it announces that a new American has been born in Israel. Would that be constitutional? Excuse me. This would be a law passed. This is a law passed by Congress, and it says every time a U.S. citizen is born in Jerusalem, the Secretary of State has to send an official letter to every other foreign minister saying that a new American has been born in Israel. Yes. That would be constitutional. That would be constitutional. Even though the Congress is basically telling the Secretary of State to engage in a certain kind of diplomatic communication with other foreign countries. The description of the law that you provide seems to be very similar to what a passport does. A passport recognizes an individual as an American citizen for purposes of communicating that information to the foreign government. Yes, exactly right. That was going to be my point, that it was, that it was extremely similar to what a passport does, that both are forms of diplomatic communication, and that what we usually say about diplomatic communication is that whatever Congress's other foreign affairs powers are, the power of diplomatic communication belongs to the President and the President alone, that in that realm we only speak with one voice. And so I guess I have to sort of say that that answer that you gave me, that this could, the Congress could say to the Secretary of State, here's the diplomatic communication that you have to send to other foreign ministers, seems, well, a little bit shocking. But recognizing an individual as an American citizen facilitates the transfer and the movement of American citizens across borders. This passport, if it were to list Israel pursuant to this law, would be indistinguishable from all the other passports of individuals born in Tel Aviv or Haifa or anywhere else in Israel. That passport would not, when shown, be making any kind of political statement. It would merely be identifying the individual by their name, date of birth, place of birth, as all American passports of individuals identify. So you would say that in Justice Kagan's hypothetical, maybe the letter that's required to be sent to every foreign head of State would be unconstitutional. But that doesn't mean that the passport is, because the passport is used primarily for purposes of identification, and it's only the letter that makes it something else. Correct. Well, if you say that, if you say that. Justice Kennedy. Do you want us to say in our opinion that this is not a political declaration? This is not a political declaration. That's correct, Justice Kennedy. Well, I'm not sure why that Congress passed it, then. Congress passed it to give these individuals the right to self-identify as they choose, because individuals in general have that ability on their passport to choose. I thought it was a Federal crime to say that you were born in the United States when you weren't, on an official document. So why is it that it's okay for Congress to say something that hasn't happened? Meaning to say that someone born in Jerusalem is actually born in Israel. Different than somebody who's born in Taiwan saying, I was born in America. Since 19 — They can self-identify all they want, but can they do that? Yes. Since 1948, Israel has acted as the sovereign over western Jerusalem, where our client was born, and since 1967, over the entire area of Jerusalem. I know what it's done. Has the U.S. recognized — has any President since 1948 recognized Israel's sovereignty over that area? In a formal sense, no, but allowing individuals to recognize that, that would not be a false statement. Ms. Lewin, may I just — I realize your time is — but if I might just go back to the thought that the Chief Justice gave you that you agreed with. Here's the way a passport begins. It begins, The Secretary of State of the United States of America hereby requests all who it may concern to permit the citizen blah, blah, blah. That's what — that's the — you know, the Secretary of State requests all of these who are going to be looking at this passport. And then in Hague v. Agee, we described a passport as a letter of introduction in which the issuing sovereign vouchers for the bearer and requests other sovereigns to aid the bearer. So this is — this passport, it seems, both in what it says itself and in what we've said about it, it's like a letter from the Secretary of State. It's a communication. It is a communication merely to facilitate this transfer of individuals as American citizens, not to make public statements about where they were born or where they're from or what countries the United States recognizes.  Thank you, Counsel. General Verrilli. Mr. Chief Justice, and may it please the Court, let me get to the heart of the problem with Section 214d. Even if Section 214d does not officially change or formally change the recognition position of the United States, it tries to deny the President the power to give effect to our official recognition position by forcing executive branch officials to issue official diplomatic communications that contradict that position. What if there were a law that said precisely pretty much what you just said? The law says, okay, Mr. President, you can recognize whoever you want, but if you recognize this country, this government, we're going to treat it as if you hadn't recognized this government. For all purposes of domestic law, we're going to pretend, we're going to operate on the assumption that you have recognized this country. I think there would be limits to Congress's ability to do that. We think that the recognition power that the President possesses necessarily includes the power to give effect to recognition servants. So that law would be unconstitutional? To the extent it's said for all purposes, yes, because it's right. Isn't that exactly what the Taiwan Relations Act says? What it says is the absence of diplomatic recognition shall not affect the application of the laws of the United States with respect to Taiwan. No, Mr. Chief Justice. That's quite different. The Taiwan Relations Act was an act that was an exercise of the necessary and proper power to implement the President's foreign relations judgment about how Taiwan should be identified. Well, let's say the President did not want to recognize Taiwan, and Congress passes a law that says for every purpose under American law, we will treat Taiwan as if it had been recognized. That might raise a serious Constitution question, but that isn't the situation that was the – it wasn't the case when it was enacted, it's not the case now. And it's different from the current situation. The fundamental problem with Section 214d is that it purports to try to force the executive branch to issue official diplomatic communications that contradict the position of the United States. Is that really true? Could Congress pass a law saying that every passport, every passport issued to an American citizen must list place of birth, including country, and that for this purpose, the country is the nation that issued the birth certificate to that individual? Could Congress do that? I think that that – that in a situation like that, the Court ought to defer to the executive branch's judgment that the place of birth listing can have significant diplomatic consequences. We have had policies in place for decades in this country that align place of birth designations with our official recognition policy. The reason we do that is because foreign sovereigns look to these communications as indicative of where we stand on this issue. If it is within Congress's power, what difference does it make whether it antagonizes foreign countries? Well, there are certain things that are within Congress's power that would antagonize foreign countries that wouldn't raise a separation of powers problem, of course, like a trade embargo or a travel ban. And this may be one of them. So the mere fact that it upsets foreign relations doesn't prove a thing. No. The critical point, Your Honor, is that what this statute does that those other statutes don't do is it requires the executive branch, the President himself and the executive branch itself to communicate a message that contradicts the official recognition position of the United States, undermining the President's credibility and preventing the President from being able to speak with one voice. But why couldn't you have a disclaimer of the kind that I've explained to the Petitioner's counsel? She said that would be perfectly lawful for you to say. It's not the position of the State Department. This is not an indication that Israel has jurisdiction over Jerusalem. Why wouldn't that solve the problem? It doesn't solve the problem, because the issuance of the disclaimer is a credibility hit. It undermines the credibility of the President, because what it's – think about what it's actually saying. What it's actually saying in this context is, yes, we're issuing thousands of passports that identify persons born in Jerusalem as being born in Israel. Yes, the Congress of the United States required that.  Really, it doesn't have any bearing on the recognition. If it had – if it were such a big deal, why did the Chief Executive at the time sign it? Well, the Chief Executive issued a signing statement, which really was, in effect, a disclaimer in 2002. President Bush's statement said in 2002, this does not change our official recognition policy, and we're going to treat it as advisory. And that did not have the effect of – So we should give no weight to the fact that the Chief Executive signed the law that he is now saying has such a dramatic – that his successor, but I gather the position is the same, is now saying has such deleterious effects on American foreign policy. As a general matter, does that have any consequence at all? A signing statement that says – No, I mean, I think this Court held in – I think this Court held in Myers that the fact that one President signed a law into – signed a law that violated separation of powers doesn't have any effect. Oh, no, I know. I'm not suggesting it does, although that's a separate question. But it does go to the credibility of the assertion that this is going to have such dramatic effects on American foreign policy. I don't think that – I think the credibility of the assertion is proven by history with all due respect, Mr. Chief Justice. Even though President Bush issued that statement, which said this didn't change the policy of the United States and that we weren't going to enforce it because he was treating it as advisory, the consequences that ensued in the Middle East in October of 2002 were that there were mass demonstrations in Jerusalem, thousands of people in the streets, some turning violent. The Palestinian parliament met and voted for the first time to declare Jerusalem the capital of the Palestinian State, no longer forbearing on that issue. And if you look at pages – But that's partly because the executive branch made such a big deal out of it. I mean, they issue a statement saying this is unconstitutional and all that. They could easily have said this is no big deal, they're just letting whoever's born there pick the name they want to put on. With all due respect – Nothing to see here. Move on. And we're proving that by going ahead and signing it. And over the intervening course, the executive has litigated this as a self-fulfilling prophecy that it's going to be such a huge deal. No, Mr. Chief Justice, with all due respect, I think on this question that you're asking me, this is a place where the Court should accord deference to the judgments of the executive branch and the State Department in particular. If the State Department had thought, if the executive had thought that it could solve the diplomatic problem by minimizing the effect of this provision, pretending as though it wasn't going to have this effect, certainly they would have followed that course. They're asking you to do is to – they're asking the government to lie. I think that – I'm not – that's exactly what you're saying the government should – the executive department should not do. I do think the problem here is that the executive made a considered judgment in 2002 that this couldn't sensibly be handled that way. How are we supposed to know? What if it just says disputed, parentheses after it, disputed? Then I gather they wouldn't be lying. They would be telling the truth. Well, I don't know. I mean, there's a couple of things about that first, Your Honor. That would have the effect of identifying the passports that were issued to people born in Jerusalem on the – because that would be the reason to put it on. But beyond that, it isn't disputed as a matter of the official position of the United States. The position of the United States is this. Oh, it's disputed as a matter of the government of the United States. Part of the government says this. Well, actually, no. I mean, the Congress is not saying under my hypothetical, this is Israel. It's saying there's a dispute about it, which I would think is about as true a statement as you could make. Well, there's a dispute certainly among the parties of the region. But I think the whole premise of Petitioner's argument here is that within the government of the United States, there isn't a dispute over the recognition issue. Can you help me with this same question? How should we approach it generally? That is to say, I can think of instances where a similar statute is serving nothing other than administrative matters. The passport should be read or something. And I can think of instances where it causes a lot of trouble. But I can think of instances like this one, and I could, and you could, easily replicate this controversy with Israel. In our imaginations, similar controversy with Donetsk and the Ukraine, where we make some agreement with Russia and something similar comes up. Or with Iran, and pretend that we remember that Russia once invaded northern part of Iran. And all over the world, there can be similar kinds of problems where it's debatable what the words of the passport actually mean or how they will be taken by others and what others will think they mean. Now, how do we, who know little about it, determine when it gets into the realm that we should stay out of it and let the President and his constitution gives him that power, or should some would think we should always intervene, perhaps some never? What, in your mind, is the right standard? How do we decide? Verrilli, I do think this Court, the last time the case was here, said that ultimately it was up to the Court to judge the constitutionality of the statute. Of course, we accept that. But in doing so, we believe it is quite important that the executive branch get deference on judgments of precisely the kind that Your Honor has identified. Now, this statute is a very rare passport statute. There really isn't any other passport statute like this one that purports to interject an issue of recognition policy into the content of passports. Scalia. General Verrilli, if we agree with the Petitioner, we do not have to confront the constitutional question, whether the President has exclusive power over recognition. If we agree with you, we are going to have to grapple with that constitutional question, right? So maybe you want to talk about it. Well, let me — I'm delighted to talk about it. But before I do, let me actually address that. I don't think you necessarily have to address the question of exclusive power to rule for us, and here's why. I think that given the Petitioner's position that 214d does not change recognition, the official recognition position in the United States, and the Senate amicus brief saying it doesn't change official recognition position in the United States, then that's a given, that the official recognition position in the United States is that we are not recognizing any nation's sovereignty over Jerusalem at this point until the parties work it out. With that as a given, the separation of powers problem with section 214d is that it forces the executive branch to engage in diplomatic communications that contradict our official recognition position and undermine the President's credibility and that the — And if it does, then their argument is going to be it does amount to a — if it does contradict it, then Congress is making its own judgment about recognition. You have to confront that. Are they entitled to do that? I don't see how you can avoid that question. Well, I'm happy to address it. I will address it now. But I do think that you can decide the question on the ground I just decided without ultimately resolving the question. Well, before you go, could you say that at a minimum the Petitioner has conceded that it is not clear that this is recognition? Yes, that's certainly the case. And therefore, we take as a given that the President's position on recognition, which is the same as the position of every President going back to Truman, is the official position in the United States and the executive is being forced to issue diplomatic communications that contradict it. May I ask — You know, really, it is the requirement of place of birth on the passport. That doesn't come from the Congress. That comes from the executive, right? That's correct. There's a longstanding policy there. And I thought that the purpose of birthplace, identified by the government, by the executive, is to identify the person and not — it's not something that the President or the executive required out of a foreign policy concern. The purpose of it was to identify the individual. Isn't that right? Yes. That is its primary purpose. But even though that's its primary function within the passport, it has the effect of raising diplomatic foreign policy issues about our recognition position. And that is why we have had in place official policies in the Foreign Affairs Manual going back to the early 1960s that align decisions of place of birth with our recognition policy. And in fact, before they were formalized in the manual, they stretched all the way back to World War II. It's just inevitable that foreign sovereigns are going to react to that, the way in which we put the information that we put in that. This is a pretty rough way to identify someone. I mean, there are hundreds of John Smiths in the United States. No, that's true, Justice Sotomayor. But, you know, and this question about whether place of birth designations are necessary on passports is actually one that Congress asked the Comptroller General to study back several decades ago. And there were a series of studies made. And the conclusion of those studies, which you can find in the current version of the Foreign Affairs Manual, not the one in the Joint Appendix, but the one on the State Department's website, is that you really have to have them for two reasons. And the first is that very often foreign nations require place of birth information to let you travel to that nation. So it's going to be highly inconvenient if it's not in the passport. And second, law enforcement and counterterrorism officials were quite concerned that passports were going to become less effective in their efforts if you remove the place of birth designation. So if you could do that. Alitoson Can I ask you the question I asked Ms. Lewin? What exactly is the position of the Executive regarding Israel's exercise of sovereign powers in Jerusalem? Is it the case that it is the position of the Executive that Israel cannot lawfully exercise any sovereign powers within Jerusalem? Verrilli, The position of the Executive is that we recognize as a practical matter the authority of Israel over West Jerusalem. With respect to the rest of Jerusalem, the issue is far more complicated. It might well be as a practical matter, although I confess I don't specifically know the answer to the question you asked, Ms. Lewin, about the status of a birth certificate issued there. It might well be that as a practical matter we would accept it as evidence of birth. Of course, we would also be It must have been accepted as evidence of birth. So the passport would never have been issued. Well, we do have the consular notification of birth. I thought you had to provide a birth certificate in order to get that. Well, that's right. But that, as a practical matter, I don't think one can infer anything about our recognition policy from that. We're recognizing practical reality. And I do think, for example, Your Honor, if we were to start issuing passports to people born in the Crimea tomorrow that identified Russia as the country of birth, that would carry obvious implications for our foreign policy position. And it would contradict the foreign policy position in a way that could be quite deleterious. Let's say there's a – passports are printed in country A, not the United States, and there's a printing plant there. And Congress passes a law saying, no, you must have the passports printed in country B because we don't think you should recognize country A. Does that interfere with the President's recognition power? Well, I'm trying to give you a precise answer to that. If the statute said they may not – passports may not be printed in country A because the United States does not recognize country A, that would be. Because Congress wished the President would not recognize country A. So in response to that, we are directing that passports that are now printed in country A be printed in country B. That would be a harder case than this one, I think, because it doesn't as clearly implicate the President's ability to give effect to recognition power. And one reason it doesn't is because that doesn't affect the content of the diplomatic communication in the way that section 214D does. I thought your position was that the President has the exclusive right to decide what interferes with his recognition power. No. I think that the President has the right to give effect to his recognition power, and Congress cannot try to command the executive branch to act in a manner that contradicts the President's recognition decision because that prevents the President from giving effect to that decision. And we do think, to go back to Your Honor's question, that it is an exclusive power with the President. It is, after all, recognition is not lawmaking. It is an executive function. And one would, therefore, expect that it be assigned to the executive by the Constitution and not to the Congress. And when — Warmaking is an executive function, too. But the — with respect to — with respect to the executive functions around recognition, when Congress wanted the — excuse me — when the Framers wanted the Congress to play a role, and the Constitution envisions a role for the Framers in those executive functions, it's prescribed. Article II gives the Senate a role in confirming ambassadors. It gives the Senate a role in advice and consent for treaties. And there isn't anything in Article II, as a structural matter, that gives the Congress, the Senate or Congress, a comparable role with respect to recognition decisions. If I think that Congress generally — that Congress has the authority under the Constitution to require identification information in passports and to specify the identification information that's included, if I believe that, then the effect of your argument, I guess, is that something that Congress can do is unconstitutional if it affects the recognition power, the President's recognition authority in some way. Is that the — is that? No. Our position is narrower. I think all you need to decide to decide this case in the government's favor here is that what Congress can't do is use the authority it has to regulate passports. And we acknowledge, as we did in our brief, that Congress has authority to regulate passports. It can't use that authority to command the executive branch to issue diplomatic communication that contradicts the government's official position on recognition. And then we would say — Kennedy, I don't like to, you know, just keep going back to the same thing. It seems to me that you could draft a statement that actually furthers your position. This passport does not indicate that the Governor of the United States and the Secretary of State recognize that Israel has sovereign jurisdiction over Israel. You're actually making your case. I appreciate the appeal of that idea, Justice Kennedy. But the problem with it is that the need to make that statement doesn't further the diplomatic interests of the United States. Ms. Lewin answered, I think, why Kennedy — But it doesn't further it? Why doesn't it further it? Because the very need to make the statement calls the credibility of the President's representation of our recognition position into question. And the reason — But it's a great — It's like the signing statement. Excuse me, Mr. Chief Justice. It's just like the signing statement, which said precisely what Justice Kennedy suggested the executive could do at this point. Right. And it did not have — and I think that's the point. The signing statement was in the nature of a disclaimer, and it did not prevent the damage to the credibility of the United States. Generally, I think the answer to the question that Ms. Lewin gave was that she said, yes, the executive could put that on the passport. But she also said Congress could then pass a law saying this is antithetical to our view, and that doesn't have to be put on the passport. On the passport, it's just birthplace Israel, period. Congress could pass that law and counter whatever the President does. And I do think that's the necessary implication of the Petitioner's argument here, not only that Congress could forbid a disclaimer, but Congress could require that the — But that law isn't in front of us. But were the court to uphold the constitutionality of the law that is in front of you, it seems to me the necessary implication of that would be that Congress could prevent a disclaimer. It could require not just that Israel be listed, but Jerusalem, Israel be listed on the country of birth. And it seems to me that that's — those are very serious interferences with the President. General, if I'm understanding your narrow holding, just so that we can underscore it, what you're saying is that Congress can't compel speech by the President with respect to foreign relations? I would put it a little more narrowly, Your Honor, that Congress cannot compel the executive to issue diplomatic communications that contradict the official position of the United States on a matter of recognition. I think that's all — that's the question before the Court in this case, and I think that's — Well, you see, I pick up this passport and it says place of birth Israel. Do I know whether this person was born in Jerusalem or in Haifa? No, you don't. So how does it — how does it advertise to the world that the President is contradicting himself? All you know is that the person was born in Israel. It could have been anywhere in Israel. The world knows that we will issue thousands of passports to people born in Jerusalem identifying them as born in Israel, and the world knows that we will be doing that because the Congress of the United States required it. And those actions — But it is not a communication contained in the passport itself, is it? You're just saying that — that this — this piece of legislation advertises to the world what the situation will be, but — but you're not compelling the President to — to say that this individual was born in Jerusalem and we're going to say he was born in Israel, because you can't tell that. You're — you're requiring the President to make statements thousands of times that contradict the official recognition position of the United States. Now, it is true that — that Border Guard in a — in a country where a person is traveling won't know whether this particular passport is one of them, I suppose, unless they ask for a place of birth information, but — a city of birth information. But unless they ask that, they won't know with a particular passport. But what everyone will know, what foreign sovereigns will know, what the parties in this region will know, is that thousands of times the executive branch is issuing passports that contradict our official recognition position with respect to — General, in — in general, when I travel abroad and come back to the United States or when I go to a foreign country and they're stamping my passport, do they have forms that require you to identify the city? I'm not aware that they do, Your Honor. I don't know the answer to that. I'm not aware that they do. But — Well, I know that some of them do. Well, they may well, Your Honor. But I do — but I do think the essential problem here with the — with what 214 does is that it tells the executive to communicate a message that the executive believes contradicts our position and undermines the President's credibility as our sole spokesman in matters of diplomacy, and there is not an issue on which the President's credibility could be more important than the question of the status of Jerusalem. The question of the status of Jerusalem is the most vexing and volatile and difficult diplomatic issue that this Nation has faced for decades. It goes all the way back to President Truman. And the fact of the matter is that the parties in the region, the nations in the region, and, frankly, people around the world and governments around the world, scrutinize every word that comes out of the United States Government and every action that the United States Government takes in order to see whether we can continue to be trusted as an honest broker who could stand apart from this conflict and help bring it to resolution. And there is no doubt that Section 214D, when it was enacted, had a serious adverse effect calling our credibility into question. You can just look at the statements from foreign parties that are in the Joint Appendix in the State Department communique at pages 231 to 233. You can look at contemporaneous press accounts from that time. And it seems to me without, of course, if we were required to implement this, we would do everything we could to try to mitigate the problem. But it seems to me that the right, it is quite important for this Court to understand that there is a very serious risk that that harm to our credibility as an honest broker on this very serious vexing issue could be called into serious question. Alito Why would that be so? No matter how this Court decides, everyone will know what the position of the President is. Everyone will know what Congress thought when it passed this legislation. Whatever we do, that's not going to be changed. And our decision isn't going to be based on any view that we may have about whether Jerusalem should be regarded as part of Israel or the capital of Israel. So why is — will there be any effect on foreign policy, except by people who will misunderstand the situation, either because they really don't understand it or they will exploit it in some way? I've got at least two points to make about that, if I could. First, it's not a misperception. It's an accurate perception. One looks at 214 as a whole, not just 214d. What 214d — what 214 does is try to force the executive branch to take a series of steps that no nation would take if it did not recognize the sovereignty of Israel over Jerusalem, and that nations would only take if they did recognize it. But Congress did that. So nothing that we do is going to change that or change what Congress thought. I think that's, with all due respect, too easy an assumption, Your Honor. The difference between when this statute was enacted, and it did give rise to very serious problems, that we had to work very hard to try to get under control. The difference between then and now, there's two very important differences, and they lead to a very important conclusion. The first important difference is it won't be one branch of the United States government saying that this should happen. It will be two branches of the United States government saying it should happen. It won't be that we will — that this statute will have been enacted, but it won't be enforced. It will be enforced. And the consequence of those two things together is that the credibility of the President on this fundamental question of where the United States stands on the status of Jerusalem until the parties work it out will inevitably and seriously be called into question and into doubt. Foreign governments, foreign peoples will not be able to have complete confidence that the position that the President announces on behalf of the United States is, in fact, the position of the United States. That is exactly why Section 214 violates the separation of powers, even if you conclude that Congress might have some residual power, which we obviously strongly disagree with. The official position of the United States is that Jerusalem — we don't recognize any nation's sovereignty over Jerusalem until the parties have worked that issue out on their own. And what this — what this statute does, if it is enforced, will undermine the credibility of our — of the President's ability to maintain that critically important diplomatic position as we move forward. Thank you. Thank you, General. Ms. Liu, you have four minutes remaining. Thank you, Your Honor. Just a couple of points. Justice Sotomayor, this is not requesting that the government lie on a passport. As the Solicitor General said, this is just recognizing a practical reality that Israel is — No, it's not. It's the place of birth. If you say Israel, you believe that — you're saying that you believe that that person was born in Israel. Yes. Well, seven years prior to the passage of this legislation, Congress passed the Jerusalem Embassy Act. And in the Senate brief, it's actually — amicus brief, it's referred to in footnote 10, which had required that the embassy be moved to Jerusalem and provided the President's waiver. And there was a waiver — and there was a waiver provided, and every President has exercised the waiver. So this would be, though, recognizing, as was said before, that there is a disagreement, but not — But you are being asked to put on the passport that you believe the place of birth of this individual is Israel. And the government and the executive has said, no, we don't think it was Israel. We think it was Jerusalem. But the speech is the speech of the individual who — But the individual is not the one issuing the passport. It's the government. The document says this is a diplomatic exchange between sovereigns. But we are permitting that speech when it comes to West Bank, Gaza Strip, a host of others, we're recognizing and allowing that speech. I take it, Ms. Lewin, when you say the West Bank, I take it you think that Congress could pass the identical statute with respect to a child born in Hebron, say? Identical — saying that — That that, too, was Israel. Correct. Yes. We are providing two alternative arguments, Justice Kennedy. One, saying that this does not amount to recognition, or if the Court decides to reach the separation of powers question and views this as somehow implicating the recognition clause, that at this point the law passed by Congress would trump the President. Allowing the State Department's say-so to control because it's an expert in foreign relations would be abdicating an independent function and would turn the President into an autocrat whose world controls. We suggest that this is analogous — the recognition power is analogous to the agreements to resolve foreign claims. And that just as though that is not an explicit authorization provided to the President, it's also not exclusive. And the agreements entered into by the President cannot contradict or run counter to the expressed will of Congress. With regard to the international response to this, the consequences, first of all, described by the Solicitor General are grossly exaggerated. And what the world knows could be — first of all, the United States State Department could be clear in their statements, as they did with Taiwan, that this does not change the United States policy with regard to sovereignty over Jerusalem. And because the passports would be indistinguishable from those who are born elsewhere, there's no continuing statement. While this may initially have some impact over time — I propose a short time, particularly if the United States makes that statement — this will become a non-issue. This will be no big deal. Kagan, may I say that this seems a particularly unfortunate week to be making this kind of, oh, it's no big deal, argument? I mean, history suggests that everything is a big deal with respect to the status of Jerusalem. And right now, Jerusalem is a tinderbox because of issues about the status of and access to a particularly holy site there. And so sort of everything matters, doesn't it? Well, it is a sensitive issue. But to suggest that what will go on a passport as a place of birth is going to implicate or make it worse, there's no evidence of that. Thank you. Thank you, counsel. The case is submitted.